```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
CHARLES H. STARKE,                       :    22cv4464 (DLC)
                                         :
                         Plaintiff,      :    OPINION AND ORDER
                                         :
               -v-                       :
                                         :
ROBERT BRIAN KRUPICA,                    :
                                         :
                         Defendant.      :
                                         :
-----------------------------------------X
```

APPEARANCES:

For the plaintiff Charles H. Starke:
Jonathan B. Strauss
233 Broadway, Suite 900
New York, NY 10279

For the defendant Robert Brian Krupica:
Luke C. Lirot
Law Offices of Luke Lirot, P.A.
2240 Belleair Road, Suite 190
Clearwater, FL 33764

Vincent S. Verdiramo
Verdiramo & Verdiramo, P.A.
3163 Kennedy Boulevard
Jersey City, NJ 07306

DENISE COTE, District Judge:

Charles H. Starke ("Starke") has brought an action against Robert Brian Krupica ("Krupica"), seeking damages on claims of fraud, misrepresentation, and for money loaned. Krupica has moved for summary judgment on the plaintiff's claims. In addition, Starke has moved for summary judgment on two of Krupica's counterclaims. For the following reasons, the

defendant's motion for summary judgment is granted, as is the plaintiff's motion.

## Background

The following facts are undisputed or taken in the light most favorable to Starke, unless otherwise indicated. Starke is an anesthesiologist licensed to practice in New York. Krupica is an attorney and operates the law firm Hughes Krupica Consulting Company Limited in Phuket, Thailand ("Hughes Krupica"). From September 2015 to July 2018, Starke employed Krupica's legal services for various business dealings and legal proceedings.

In December 2015, Krupica introduced Starke to Daniel Matts ("Matts"), a bar owner in Phuket. Matts was involved in several business ventures, including an import business. Starke himself owns a liquor store in Brooklyn, New York. Over the summer of 2017, Starke and Krupica discussed Starke entering into business with Matts. On August 8, Starke and Matts, along with two other individuals, entered into a shareholders' agreement (the "Agreement") for Lavish Global Imports, Inc. ("Lavish"). As described in the Agreement, Lavish's purpose was to import alcoholic beverages for distribution and sale in Thailand. Starke initialed each page and signed the last page of the Agreement. Starke received nine thousand shares of Lavish, amounting to 45 percent of Lavish's total shares. Matts was the

sole director of Lavish and managed the day-to-day operations of the company.

Over the span of five months in 2017, Starke wired $246,000 to Hughes Krupica, which operated an account from which funds were dispersed to Lavish.  These funds included Starke's initial buy-in to Lavish and loans to Lavish to import the inventory.

Krupica served as a director of Lavish for one day in February of 2018.  Following a meeting at the offices of Hughes Krupica between Matts, Starke, and Krupica, Krupica agreed to become a director of Lavish on February 14, 2018.  On February 15, Starke and Krupica exchanged emails about Starke's desire to restructure Lavish.  Krupica immediately resigned as director of Lavish.

From March 18, 2018 to January 6, 2020, Matts and Starke exchanged emails regarding Lavish and its finances.  On February 13, 2019, Matts emailed Starke to address concerns about Lavish's inventory and its finances.  Matts explained that the storage facilities housing Lavish's inventory in Bangkok and Laguna were threatening confiscation of the inventory because of unpaid bills.  In addition, Matts wrote, "The company has no incoming revenue apart from 3-5 bottles a month . . . which goes directly to our rent bill."

In emails to Starke later that month, Matts emphasized that he had pursued various avenues to sell Lavish's inventory to no

3

avail, that Lavish was in need of liquidation or dissolution in order to pay outstanding bills, and that Lavish's disputes with its storage facilities would lead to legal proceedings.  In an email dated February 25, Matts expressed that Starke had "rendered [him] unable to continue fulfilling [his] duties as director of the company."

On October 22, 2019, Matts emailed Starke to inform him of an offer from a buyer interested in Lavish's stock of vodka. Matts explained that this buyer was willing to purchase the stock at a below-market price, adding "I know this is a big loss, but I honestly don't see another way to sell it off.  Our bills are continuing to build up and we have no income coming into the company."

On January 26, 2020, Starke filed a police report (the "Police Report") with the Muang Phuket Provincial Police Station, accusing Krupica of embezzlement.  In April 2021, Starke posted a negative review of Krupica's law firm on the firm's Google page (the "Review").

Starke filed this action against Krupica on May 31, 2022. He filed the first amended complaint ("FAC") on August 31, in response to a motion to dismiss.  On December 14, the Court denied the defendant's motion to dismiss this action for lack of personal jurisdiction over Krupica.

On January 27, 2023, the defendant answered the FAC and filed seven counterclaims. Following discovery, on September 5, the plaintiff moved for summary judgment on the defendant's fourth and seventh counterclaims. On September 15, the defendant moved for summary judgment on each of the FAC's three claims. The plaintiff's motion became fully submitted on October 6, and the defendant's motion became fully submitted on October 16.

## Discussion

Summary judgment may be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To present a genuine issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence such that a reasonable jury could return a verdict for the nonmoving party." Horror Inc. v. Miller, 15 F.4th 232, 241 (2d Cir. 2021) (citation omitted). Material facts are facts that "might affect the outcome of the suit under the governing law." Choi v. Tower Rsch. Cap. LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted). In considering a motion for summary judgment, a court "construe[s] the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences

against the movant." Kee v. City of New York, 12 F.4th 150, 158 (2d Cir. 2021) (citation omitted).

Although the movant bears the initial burden of showing that there is no genuine dispute as to a material fact, when "the burden of proof at trial would fall on the nonmoving party, the moving party can shift the initial burden by pointing to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." McKinney v. City of Middletown, 49 F.4th 730, 738 (2d Cir. 2022) (citation omitted). "If the moving party carries its burden, the nonmoving party must come forward with evidence that would be sufficient to support a jury verdict in its favor." Id. (citation omitted). "The mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant." Id. (citation omitted).  "[R]ather than merely deny the moving party's allegations in a general way, the party opposing summary judgment must present competent evidence that creates a genuine issue of material fact." Id. (citation omitted).  Unsupported allegations do not create a material issue of fact. Id.

In briefing their respective motions for summary judgment, the parties rely on New York law.  Therefore, this Court will

apply New York law.  See Trikona Advisers Ltd. v. Chugh, 846 F.3d 22, 31 (2d Cir. 2017).

   I.   Defendant's Motion for Summary Judgment

The defendant has moved for summary judgment on all three of the plaintiff's claims.  The plaintiff's fraud and misrepresentation claims arise out of the parties' dealings with Lavish.  The plaintiff's third claim arises from money that Krupica allegedly borrowed from Starke.

The defendant has adequately shifted his burden as movant for summary judgment by pointing to a lack of admissible evidence to prove every element of plaintiff's claims.  Along with his brief opposing the defendant's motion, the plaintiff has submitted his responses to the defendant's Rule 56.1 statement, his own affidavit, excerpts from three depositions, and additional documents.  These documents do not provide sufficient evidence to support a verdict in the plaintiff's favor or to create material issues of fact to sustain the plaintiff's claims.

   a. Fraud

The FAC alleges that Krupica defrauded the plaintiff by obtaining $225,000 from the plaintiff to fund Lavish.  The FAC asserts that fraud has occurred because the plaintiff was never paid back any of his investment.  "Under New York law, the five elements of fraud are "(1) a material misrepresentation or

omission of fact (2) made by [a] defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 13 F.4th 247, 259 (2d Cir. 2021) (citation omitted). See also Hershman v. Bank of N.Y. Mellon, 196 N.Y.S.3d 84, 86 (2d Dep't 2023). "[S]tatements will not form the basis of a fraud claim when they are mere puffery or are opinions as to future events." Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 2000) (citation omitted) (applying New York law). See also Kato Int'l LLC v. Gerard Fox Law, P.C., 150 N.Y.S.3d 711, 712 (1st Dep't 2021). "The failure to fulfill a promise to perform future acts is not ground for a fraud action unless there existed an intent not to perform at the time the promise was made." Cap. Mgmt. Select Fund Ltd. v. Bennett, 670 F.3d 194, 205 (2d Cir. 2012) (citation omitted).

The plaintiff's claim of fraud in connection with his investment in Lavish arises from his assertion in the FAC that he would not have invested his money in Lavish but for Krupica's "guarantee" that Lavish would generate large amounts of capital. In opposition to this motion, Starke asserts that in July 2017 Krupica told him that the investment in Lavish was "safe and great." These statements are statements of opinion and are predictions about future events that Krupica did not control.

They are not false statements upon which a claim of fraud may be premised.

Moreover, the Agreement that Starke executed with Matts in August of 2017 contained the following clause: "This Agreement constitutes the entire agreement and understanding between the Parties with respect to the subject matters herein and supersedes and cancels in all respects all prior verbal and written understandings and agreements between the Parties."[1]  The plaintiff has acknowledged in his responses to the defendant's interrogatories that his complete understanding of the Agreement is "mirrored" in the document.  While Krupica was not a party to the Agreement, this clause nonetheless is relevant.  It acknowledges that any prior "understandings" have been superseded by the Agreement.  As is common with investments, there was no guarantee in the Agreement of a return on the investment.

The plaintiff asserts that Krupica never provided proof that an inventory in alcohol was acquired with the funds Starke provided to Lavish through Hughes Krupica.  To support his speculation that Lavish never purchased any alcohol with

---

[1] The defendant asserts that similar language is contained in the Share Purchase Agreement.  It does not appear that that document has been submitted to the Court in connection with this motion practice.

Starke's money, Starke relies on the fact that neither he nor Krupica ever saw the inventory. These assertions reflect a misunderstanding of the burden of proof, which rests on Starke. Starke has provided no evidence that his funds were diverted or used for any purpose other than those associated with the business of Lavish. His or Krupica's failure to inspect the inventory is insufficient to establish that the inventory did not exist, much less that Krupica was involved in any malfeasance in this regard. In any event, the defendant has presented emails between the plaintiff and Matts discussing the importation and storage of the inventory, and the difficulties associated with both. These difficulties included the need to pay import duties. Because Starke has not carried his burden to satisfy the requisite elements of his fraud claim, Krupica is entitled to summary judgment.[2]

b. Misrepresentation

The FAC next alleges that Krupica misrepresented to the plaintiff that his investment in Lavish would be financially sound, that Starke would own 50% of Lavish, and that Krupica

---

[2] In opposition to this motion, Starke discusses the standard for pleading a claim of fraud as well as the standard that applies to a summary judgment motion. The defendant seeks summary judgment through this motion, not dismissal for failure to state a claim.

would serve as a director of Lavish and oversee its business.³ Starke asserts that Krupica made each of these representations before Starke agreed to invest in Lavish.

To prove fraudulent misrepresentation under New York law, "a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 186-87 (2d Cir. 2004) (citation omitted). To be actionable, the representation must be factual, and not an opinion or prediction. Cantor v. Villucci, 181 N.Y.S.3d 644, 646 (2d Dep't 2023).

A plaintiff may maintain a claim of fraud under New York law where the claim is premised upon an alleged breach of contract if he: "(1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 183 (2d Cir. 2007); see also

---

³ In his motion for summary judgment, the defendant has construed the plaintiff's claim for misrepresentation as a claim for fraudulent misrepresentation. The plaintiff has not disagreed.

11

Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996). A "misrepresentation of present facts is collateral" to a contract and may involve breach of a duty separate from contractual duties. Merrill Lynch, 500 F.3d at 184.

The plaintiff has failed to identify any factual statement made by the defendant at a time when there is evidence that the defendant knew the statement to be false. Krupica's expression of optimism that the investment would prove to be sound or profitable is insufficient to support a fraudulent misrepresentation claim.

The claim regarding 50 percent ownership in Lavish also fails. The plaintiff has not shown reasonable reliance on this statement. The Agreement, which Starke signed, provided that Starke would only receive 45 percent of Lavish's shares. Thus, its very terms gave Starke notice that he was not receiving a 50 percent ownership stake.

Similarly, Starke has not presented evidence that he reasonably relied on a statement that Krupica would be a director of Lavish. The Agreement provides that Matts is the "sole director" of Lavish and "carries out the day to day management of the Company." The Agreement did not name Krupica as a director of the company. Thus, Krupica is also entitled to summary judgment on the claim of fraudulent misrepresentation.

c. For Money Loaned

The third claim in the FAC alleges that Krupica received a personal loan from Starke in September 2017, but did not return the money to Starke in September 2018, when Starke demanded that it be repaid.  A claim for money loaned exists where there is an agreement between parties for money to be loaned and repaid.  <u>Salisbury v. Salisbury</u>, 572 N.Y.S.2d 745, 746 (3d Dep't 1991).  The elements of such a claim include: (1) the transfer of money from one party to another, (2) an agreement made between the parties that the money will be repaid, and (3) a timeframe in which the money is to be repaid.  <u>Id.</u>

The plaintiff appears to have abandoned this claim.  He has neither pled nor proved that Krupica had agreed to pay this money back, or that the money would be repaid on a particular schedule.  The plaintiff's affidavit does not discuss the loan or obligation to repay the loan.  The plaintiff's brief in opposition to the defendant's motion for summary judgment does not discuss this claim either.

II.  Plaintiff's Motion for Partial Summary Judgment

The plaintiff has brought a motion for summary judgment on the defendant's fourth and seventh counterclaims.  Both are claims for defamation.  The plaintiff argues that both claims are insufficiently pled and are barred by the one-year statute

of limitations imposed on defamation claims.  The plaintiff's motion is granted.

"Under New York law a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." Palin v. N.Y. Times Co., 940 F.3d 804, 809 (2d Cir. 2019).  "Since falsity is a necessary element of a defamation cause of action and only facts are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action." North Shore Towers Apartments Incorp. v. Kozminsky, 193 N.Y.S.3d 310, 312 (2d Dep't 2023) (citation omitted).  Furthermore, "[a] cause of action alleging defamation is governed by a one-year statute of limitations, and accrues when the allegedly defamatory statements are originally uttered." Cohen v. Cohen, 178 N.Y.S.3d 129, 130 (2d Dep't 2022); N.Y. C.P.L.R. § 215(3) (McKinney 2019).

  a. Counterclaim Four

Counterclaim four alleges that the plaintiff posted a defamatory review of the defendant on Google, damaging the defendant's reputation and causing him financial harm. Counterclaim four is time-barred.

Starke asserts that he posted the Review on Google in April 2021. The statute of limitations on a claim of defamation relating to the Review expired in April 2022. The defendant's counterclaims were filed on January 27, 2023, several months beyond the statute of limitations period.

Krupica argues that the statute of limitations period cannot be calculated because screenshots of the Review do not specify a date on which the Review was published.[4] Because the defendant has not offered evidence to place the plaintiff's testimony in dispute, this claim is dismissed.

    b. Counterclaim Seven

Counterclaim seven alleges that the defendant made false statements to a police officer and filed a false police report against the plaintiff. Counterclaim seven is also time-barred.

The Police Report was filed on January 26, 2020. The statute of limitations on a claim of defamation relating to the Police Report expired on January 26, 2021. The defendant's counterclaims were filed over two years after the statute of limitations expired.

Krupica argues that the statute of limitations period should be tolled under the doctrine of continuing wrongs. This

---

[4] The two screenshots of the Review indicate that they were published one year (the January 27, 2023 screenshot) or two years (the October 6, 2023 screenshot) earlier. Thus, the screenshots also indicate that this claim is time-barred.

doctrine applies where there is "a series of independent, distinct wrongs rather than a single wrong that has continuing effects." Ganzi v. Ganzi, 123 N.Y.S.3d 574, 576 (1st Dep't 2020). Krupica has not shown that independent, distinct wrongs occurred after the Police Report was filed. Therefore, the doctrine of continuing wrongs does not apply.

## Conclusion

The plaintiff's September 5 and the defendant's September 15 motions for summary judgment are granted. The plaintiff's FAC is dismissed and judgment is entered for the plaintiff on the defendant's fourth and seventh counterclaims.

Dated:   New York, New York
         November 7, 2023

                              _____
                                      DENISE COTE
                              United States District Judge